# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 13-11-BU-BMM |
| Plaintiff/Respondent, | |
| vs. | **ORDER** |
| IRAN MICHAEL KESSELMAN, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Kesselman's amended motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Kesselman is a federal prisoner proceeding with counsel. The United States has filed an Answer and Kesselman a Reply. Kesselman seeks a new sentencing hearing.

## I. Background

A grand jury indicted Kesselman on one count of conspiracy to possess 500 grams or more of a substance containing methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1); and one count of possessing 500 grams or more of a substance containing methamphetamine with intent to distribute it, or aiding and abetting such possession in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The offenses were alleged to have occurred

1

between February 2008 and July 2012. (Indictment, Doc. 1 at 2-3). If convicted on Count 1 or Count 2, Kesselman faced a ten-year mandatory minimum sentence and a maximum sentence of life in prison. 21 U.S.C. § 841(b)(1)(A)(viii).

Kesselman and the United States filed a plea agreement. In exchange for dismissal of the Indictment, Kesselman pled guilty to a superseding Information charging him with one count of conspiracy to possess an unspecified quantity of methamphetamine. The maximum penalty under the Superseding Information was 20 years in prison. No mandatory minimum term applied. *See* 21 U.S.C. § 841(b)(1)(C). The United States filed an offer of proof with the plea agreement. The offer of proof stated, in part, that the Government could present evidence that "[m]ore than 30 ounces," or 850.5 grams, "of a substance containing methamphetamine was involved in this conspiracy." (Offer of Proof, Doc. 50 at 4 ¶ 4).

Kesselman pled guilty in open court on September 10, 2013. (Minutes, Doc. 58). Asked whether he disagreed with anything in the offer of proof, Kesselman responded: "It's just the quantity. It seems to be way, way out of line, and I don't think there's any proof of that kind of quantity." (Change of Plea Tr., Doc. 93 at 30:22-31:6). Asked what he thought the quantity was, Kesselman said, "I think it would be about 14 ounces [396.9 grams]. It could be in that range there." (*Id.* at 31:15-21).

2

The United States Probation Office drafted a presentence report. Kesselman did not object to its findings either in his sentencing memorandum or at sentencing. Kesselman asked instead that the Court limit the sentence to 180 months in view of Kesselman's age. (Sentencing Mem., Doc. 71 at 3; Sentencing Tr., Doc. 97 at 4:4-10).

Kesselman's base offense level of 34 corresponded to his responsibility for 1.5 to 5 kilograms of methamphetamine. Kesselman also received a two-level upward adjustment as a leader or organizer and a three-level downward adjustment for acceptance of responsibility. His total offense level landed at 33. A level 33 translated to a criminal history category of VI.

In light of the 20-year statutory maximum, the advisory guideline range was reduced from 235 to 290 months to 235 to 240 months. U.S.S.G. § 5G1.1(c)(1). Judge Haddon found the appropriate sentence was 240 months. Judge Haddon reduced that term by 16 months to account for time Kesselman already had served on a concurrent state sentence. *See* U.S.S.G. § 5G1.3(b). The Court sentenced Kesselman to serve 224 months in prison, concurrent with his state sentence, followed by a three-year term of supervised release. (Minutes, Doc. 77; Judgment, Doc. 78 at 2-3; Sentencing Tr., Doc. 97 at 4:16-5:12, 16:5-23).

Kesselman appealed. Counsel filed a motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). After independently reviewing the record, the

Ninth Circuit determined that no arguable basis for relief against the conviction existed and affirmed it. The Ninth Circuit also enforced Kesselman's waiver of his right to appeal the sentence and dismissed that portion of the appeal. (*See* Mem., Doc. 110 at 1-2, *United States v. Kesselman*, No. 13-30375 (9th Cir. Aug. 28, 2014)).

Kesselman filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendments 782 and 788 to the United States Sentencing Guidelines on March 6, 2015. Application of the Amendments lowered Kesselman's base offense level from 34 to 32. The Court imposed an amended sentence of 215 months. (Am. Judgment, Doc. 140 at 1).

Kesselman signed his motion under 28 U.S.C. § 2255 on November 18, 2015. (Mot. § 2255, Doc. 149 at 6). The Court will assume that he mailed it that day. *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

## II. Claims

Kesselman alleges that counsel provided ineffective assistance of counsel at sentencing because he failed to object to the drug quantity and failed to object to a two-level enhancement for a leading or organizing role in the conspiracy. Kesselman contends that counsel should have advised the sentencing court of his efforts to cooperate with law enforcement and asserts that he suffered prejudice

4

from counsel's cumulative errors. (*See* Am. § 2255 Mot., Doc. 168 at 17, 21, 29, 33).

*Strickland v. Washington*, 466 U.S. 668 (1984), governs these claims. At this stage, Kesselman must allege facts sufficient to support an inference that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. He also must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.*

### III. Analysis

Kesselman claims that counsel provided ineffective assistance of counsel at sentencing because he failed to object to the drug quantity calculation. The presentence report specifies no particular quantity. The presentence report simply states that it would be "reasonable and conservative to conclude that in the conspiracy Kesselman was responsible for at least 1.5 kilograms, but less than 5 kilograms of methamphetamine, which provides a base offense level of 34." (Presentence Report ¶ 15).

The presentence report contains no explanation as to what transactions or statements contributed to the base offense level. The presentence report includes a claim by co-conspirator Leonard Ewalt. Ewalt claims that on most occasions he

5

either received drugs by mail or went to Las Vegas to retrieve them. Ewalt claims, however, that Kesselman met him once at the Copper King Inn in Butte.

Ewalt claims that he collected from Kesselman one eight-ball, sold it, returned for another, and sold it, over and over, until he had sold 20 ounces of methamphetamine in 24 hours. Kesselman disputes this scenario. (*see* Am. § 2255 Mot., Doc. 168 at 20; Reply, Doc. 193 at 12). Kesselman points out if Ewalt were telling the truth, he would have gone in and out of Kesselman's room at the Copper King 160 times in 24 hours—six or seven entries and six or seven exits, every hour, for 24 hours.

The presentence report fails to elaborate on the full significance of the logistics of Ewalt's claim. The law enforcement report that served as the source for the information in the presentence report provides as follows:

> [I]n the spring of 2012 [Ewalt] met with Kesselman at the Copper King Inn in Butte, Montana. L. Ewalt said that he sold approximately 20 ounces of meth throughout Butte for Kesselman for a 24 hour period. L. Ewalt said that he would sell the meth for Kesselman in increments of 1/8 ounce quantities for $300; once he sold an 1/8th of an ounce he would return to Kesselman to get another 1/8 of an ounce until all of the meth was sold.

(Discovery, Doc. 168-2 at 244 para. 6.)

The presentence report summarized the information in the law enforcement report as follows:

> 13. . . . Ewalt said in the spring of 2012 he met with Kesselman at the Copper King Inn In Butte, at which time he sold

> approximately 20 ounces of methamphetamine in Butte for Kesselman in a 24 hour period. Kesselman disputes that he sold Ewalt 20 ounces. Kesselman admitted selling to Ewalt at Copper King, but it was only ½ ounce. Fernandez stated he was present when Kesselman sold methamphetamine to Ewalt. Fernandez recalled it was 2 to 3 ounces.
>
> 14. Ewalt said he would sell methamphetamine for Kesselman in increments of one-eighth ounce quantities for $300 at a time, until all the methamphetamine was sold. Ewalt explained McCubbins wanted him to get methamphetamine for her, and she sent Kesselman $1,800 for the methamphetamine. Kesselman accidentally mailed the methamphetamine to Ewalt and Ewalt kept it rather than giving it to McCubbins. . . .

(Presentence Report ¶¶ 13, 14). The presentence report's discussion of Ewalt's statement obscures the statement's lack of credibility. The presentence report incorrectly suggests that Ewalt claimed to follow his usual practice to repackage Kesselman's meth and sell it as eight-balls.

Kesselman's amended § 2255 motion adequately shows that counsel possessed good reason to object to the presentence report's description of Ewalt's statement to law enforcement and the inclusion of 20 ounces of meth in the drug quantity calculation. A quantity of 1,500 grams served as the bottom threshold of a base offense level of 34. Twenty ounces equals 567 grams. No obvious strategic reason existed for Kesselman's counsel not to have objected to the presentence report's attribution of 567 grams to Kesselman.

Under the elements of *Strickland*, the United States's answer might point to facts supporting an inference that counsel also possessed good reason not to object.

7

In the alternative, the United States's response might point to facts supporting an inference that the base offense level would have remained 34 even if counsel had objected. Kesselman could show no prejudice in that circumstance. The United States's answer includes neither claim.

The United States simply discusses the presentence report's summary of the evidence. The United States concludes, based on the presentence report's information, that "a conservative estimate by the PSR author and the sentencing court could easily be 52 ounces of methamphetamine, which is 1.5 kilograms." (*See* Answer, Doc. 186 at 14). The United States's answer fails to explain which transactions or statements contributed to the base offense level.

The United States's estimate of 52 ounces in its answer proves Kesselman's claim. Fifty-two ounces equals 1.474 kilograms. This amount corresponds to a base offense level of 32 under the 2013 Guidelines. *See* U.S.S.G. § 2D1.1(c)(4) (Nov. 1, 2013). The presentence report used the 2012 Guidelines Manual. (*See* Presentence Report ¶ 20.) The Court conducted the sentencing hearing on December 20, 2013, so the 2013 Guidelines should have applied. The relevant provisions of § 2D1.1(c) appear the same in both editions. It proves both unreasonable and prejudicial for defense counsel to have failed to object to a base offense level of 34.

The United States also suggests a base offense level of 34, or even 36, could

be supported by assuming that Kesselman always sold meth that was 99% pure. (Answer, Doc. 186 at 14-15.) An alternative method of calculation could provide a strategic reason why defense counsel failed to object to the probation officer's calculation. The United States fails to explain why it believes the 99%-pure meth seized from Kesselman's vehicle in July 2012 (*see* Presentence Report ¶ 11) proved typical of all the meth that he provided "beginning in or about February 2008 and continuing thereafter until" July 2012. (*See* Superseding Information, Doc. 51 at 2). To the extent purity played any role in the base offense level, it proved unreasonable and prejudicial for defense counsel to fail to object to the lack of reliable evidence.

The cases the United States cites (*see* Answer, Doc. 186 at 10) demonstrate the weakness of the evidence here. The sentencing court in *United States v. Flores*, 725 F.3d 1028, 1035-38 (9th Cir. 2013), heard trial testimony from three co-conspirators and three law enforcement officers, as well as a fourth co-conspirator's testimony at the sentencing hearing. *See id*. at 1035-36. The Ninth Circuit still conducted its own detailed analysis. *See id*. at 1035-38. The Ninth Circuit determined that even cutting the length of the two-year conspiracy in half, and the number of pills sold per day by more than 80%, the base offense level still remained at the highest level of 38. *Id.* at 1038.

The defendant in *United States v. Lopes-Montes*, 165 F.3d 730 (9th Cir.

9

1999), agreed to deliver 6.8 kilograms of methamphetamine. He delivered 3.2 kilograms of 80% pure methamphetamine. The defendant promised to deliver a little more again the next day. At that point, he was arrested. "Absent evidence to the contrary, the district court was entitled to assume that the remaining 3.6 kilograms Lopes-Montes agreed to deliver was a mixture with a similar purity level." *Id.* at 732. The court sentenced him based on responsibility for 6.8 kilograms of 80% pure methamphetamine because the transaction involved an agreement to sell an agreed-upon quantity. *See id.* at 731 (quoting U.S.S.G. § 2D1.1 n.12 (in 2013, n.5 para. 3)). Neither of these cases supports the assumption suggested by the United States.

### IV. Conclusion

The United States notes that "a district court can forego an evidentiary hearing and rely on the record" and asserts that "a hearing is unnecessary." (Answer, Doc. 186 at 20). No reason exists to believe that additional evidence might support denial of Kesselman's motion. He is entitled to a new sentencing hearing.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Kesselman's motion to vacate, set aside, or correct the sentence (Doc. 149) is GRANTED.

2. The Judgment and Amended Judgment (Docs. 78, 140) are VACATED.

3. Sentencing is set for **June 6, 2018,** at **11:00 a.m.** at the Missouri River Courthouse in Great Falls, Montana.

4. The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report. Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5. The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before April 27, 2018. The probation officer shall not disclose any recommendation made or to be made to the Court.

6. If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7. Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before May 11, 2018. U.S.S.G. § 6A1.2. **Any unresolved objections are expected to be included in the pre-sentence report, not in a sentencing memorandum.**

8. The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before May 18, 2018.

9. Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before May 25, 2018.  Absent good cause shown, sentencing memoranda and supporting documents filed after May 25, 2018, will not be considered in addressing sentencing issues.  Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10. Responses to sentencing memoranda shall be filed on or before June 1, 2018.

11. Reply briefs will not be accepted for filing in sentencing matters.

12. The Court will resolve objections at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13. A party intending to call witnesses shall give notice to this Court ten days prior to the sentencing date.

14. The United States Marshals Service must transport Iran Michael Kesselman, BOP # 02737-000, to the District of Montana.  Kesselman must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15. When an Amended Judgment is entered in the criminal case, the clerk shall enter judgment in the civil action, by separate document, in favor of

Kesselman and against the United States.

DATED this 27th day of February, 2018.

_Brian Morris_
Brian Morris
United States District Court Judge

cc: USPO
    USMS